# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CHAVEZ GOMEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 1:14-cv-00425-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Linda Chavez Gomez seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DI") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act").  The matter is before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Magistrate Judge.  Following a review of the record and applicable law, the Court concludes the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and free of legal error and, accordingly, affirms the ALJ's decision.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

A. *Procedural History*

On March 21, 2011,[1] Plaintiff applied for DI and SSI.  In both applications, Plaintiff alleged

---

[1] The ALJ's decision states Plaintiff applied for benefits on March 3, 2011, but Plaintiff's applications reflect March 21, 2011 as the application date.

1

disability beginning on August 15, 2003.  The Commissioner denied the claims on August 1, 2011, and upon reconsideration, on May 11, 2012.  Plaintiff then filed a timely request for a hearing.

Plaintiff appeared and testified before an ALJ, Sharon L. Madsen.  Also at the hearing were Plaintiff's counsel and an impartial vocational expert, Judith Najarian.  In a written decision dated January 18, 2013, the ALJ found Plaintiff was not disabled under Titles II and XVI of the Act.  On January 29, 2014, the Appeals Council denied review of the ALJ's decision, which therefore became the Commissioner's final decision and from which Plaintiff filed a timely complaint.

B.  *Factual Background*[2]

1.  <u>Plaintiff's testimony before the ALJ (December 11, 2012).</u>  Appearing before the ALJ to discuss her claims based on depression, anxiety, back pain and rosacea, Plaintiff testified as follows: Born on September 30, 1974, Plaintiff had three children, aged six, nine and 11.  Plaintiff did minimal household chores.  Her daily routine involved getting her children ready for school, with the help of her mother, washing the dishes and cleaning the floor.  AR 28.  When Plaintiff's back and neck pain were triggered by the household chores she would take a rest, leaving dinner preparations to her mother.  Because Plaintiff was unable to focus, she did not watch T.V., listen to music, read or use the computer.  Her energy fluctuated.  When not engaged in chores, Plaintiff either napped or sat in her room.  She did not have a hobby or participate in any social activity.

Plaintiff's work history included employment with various companies.  She worked as a stocker, cashier, billing and in customer service.  She was able to maintain the medical billing job for about three years.  During this time, Plaintiff could lift five or ten pounds, sit for about 30-45 minutes and stand for about 45 minutes to an hour.  She could walk for about a block and a half.  Plaintiff has had back and neck issues for about a year and takes Ibuprofen, but has not seen a physical therapist or obtained an x-ray.  With regard to her anxiety, Plaintiff stated that dealing with her children and getting to appointments made her anxious.  The anxiety resulted in panic attacks "at least two to three times a week," lasting between 15-20 minutes.  AR 34, 37.  These panic attacks made Plaintiff weak and required her to rest for at least an hour, about five or six times a day.  Additionally, she had trouble sleeping at nights.  As for Plaintiff's depression, she received

---

[2] The relevant facts herein are taken from the Administrative Record ("AR").

counseling and took some medication.   Her rosacea was in control with medication.

Plaintiff's conditions affected certain aspects of her life.  Her mother and sister handled her finances.  She had problems getting along with people.  She did not feel comfortable around people, would get irritated and her anxiety level would rise.  She did not leave the house unless it was for a doctor's appointment for herself or her children, which was about five times a week, and she would be accompanied by someone.

2.   <u>Adult Function Report (April 30, 2011).</u>  As stated in Plaintiff's Adult Function Report ("AFR"), she spent her days getting her children ready for school, making her bed and doing a little cleaning.  Plaintiff reported having trouble sleeping at night and being awake all day.  Plaintiff also reported feeling claustrophobic and experiencing panic attacks.  She could no longer work due to her conditions.

Plaintiff used a calendar as a reminder to take her medications.  Though sometimes she had no energy to cook, Plaintiff was able to prepare her own meals.  She was also able, with breaks, to do some household chores like cleaning, laundry and wash the dishes (with her mother's help when needed).  Plaintiff was able to go outside and did so four or five times, though it is unclear from the report whether they were daily or weekly.  She could drive and go out alone.  She did her shopping in stores, buying groceries, personal hygiene items and clothes for the children, every two weeks for about three hours.  She could manage her finances, but her conditions have made it "overwhelming when making checks out to bills."  AR 247.

Reading was difficult because Plaintiff could not focus and would get headaches.  Once or twice a month she spent time with others for about 15 minutes.  She needed reminders about her doctor appointments which occurred once every six weeks, but she did not need to be accompanied.

Because Plaintiff "sometimes does not like to hear people['s] problems," she had trouble getting along with others.  AR 248.  She did not like to be social with people whom she "use[d] to be close to."  AR 248.  Plaintiff was able to walk for half a mile before needing to rest for 30 minutes.  Her conditions negatively affected her memory, concentration, understanding and ability to follow instructions.  She could pay attention for 45 minutes to an hour but could not finish what she started.  It took her a couple of times to read and understand written instructions, and about two to three times

with spoken instructions.  She worried a lot and was "ok" with changes in routine, but generally did not like change.

3. <u>Third Party Adult Function Report (April 30, 2011).</u>  Plaintiff's sister, Sophia Macias, reported that Plaintiff's daily activities involved getting her children ready for school, making her own bed and doing a little cleaning.  Before her conditions began, Plaintiff could have long conversations but now worries a lot and has trouble sleeping at night.  Sometimes Plaintiff needed reminding to take a shower, to take her medication for her anxiety and to go to the doctor.

Ms. Macias reported that Plaintiff could cook three to four times a week for two hours at a time but now takes longer due to her conditions.  Plaintiff tries to wash her clothes and do the dishes for two or three hours every day with some help, but sometimes does not have the energy.  She could not do yardwork because the heat or cold irritated her face.

Plaintiff went outside four to six times a day, could do so alone and could drive a vehicle.  She shopped in the stores twice a week for about three hours, could manage her finances with some help as she got overwhelmed, and has to take breaks when paying bills.  She played with her children three to four times a day but gets tired easily or gets red in the face.

Socially, Plaintiff spent time with others on the phone or goes on the internet once or twice a month and takes her children to church or the movies.  She had problems getting along with others as she sometimes seems uninterested.  The conditions affected Plaintiff's memory, concentration and ability to complete tasks.  Because her attention span lasted no longer than an hour she could not complete tasks like watching a movie, maintaining a conversation or doing chores.  She needed to read written instructions twice and will ask that spoken instructions to be repeated.  Plaintiff did not like changes in her routine and will get quiet.  When stressed, she will get nervous and experience anxiety.

4. <u>Disability Appeal Reports.</u>  Plaintiff submitted multiple Disability Appeal Reports (most undated) to the Social Security Administration for reconsideration of her claims.  In the reports, Plaintiff listed Clinica Sierra Vista ("the Clinic") as where she received treatment for her depression, anxiety and panic attacks.  Drs. Sarah Morgan (psychiatrist) and Alexis Baca (psychologist) provided Plaintiff's mental counseling and medication at the Clinic.  Dr. Taylor

treated Plaintiff's rosacea.

Plaintiff reported struggling with remembering appointments and taking her medications, and used a calendar to remind herself. She reported feeling tired, not having energy, and suffering from insomnia. In one report, Plaintiff reported her anxiety and panic attacks had gotten worse while in another report she indicated "no changes" to her ability to care for her personal needs. And in a separate report, Plaintiff indicated she had no medical tests and did not schedule any test for the treatment of her conditions since she last completed a disability report.

5. Medical evidence. Records show that Plaintiff visited the Clinic numerous times between 2008 and 2012 for various treatments. Concerning mental health, Drs. Morgan and Baca were the treating physicians. Both diagnosed Plaintiff with major depressive disorder, Alzheimer's disease, attention deficit disorder, attention deficit hyperactivity disorder, panic disorder without agoraphobia and/or general anxiety disorder. Dr. Morgan treated Plaintiff on at least ten occasions between 2011 and 2012.

On June 18, 2011, Dr. C. Bullard, a state agency medical consultant, reviewed Plaintiff's case. Based on information from Dr. Taylor and the Clinic, Dr. Bullard recommended categorizing Plaintiff as having non-severe mental and physical impairment. Dr. Bullard questioned Plaintiff's credibility based on conflicting evidence about her level of social interaction and why she stopped working.

On July 8, 2011, consultative examiner Dr. Mary Lewis conducted a comprehensive psychiatric evaluation. Plaintiff complained of anxiety and not being able to work as she would get bumps on her face when she is stressed out, which occurred twice a month. According to Dr. Lewis, Plaintiff showed no signs of substance abuse. She had no significant impairment in the following areas: daily activities, social functioning, managing her own funds, understanding and remembering instructions, concentration and attention, accepting instructions from a supervisor and responding appropriately, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions at a consistent pace, interacting with coworkers, and dealing with various changes in a work setting. Plaintiff also had minimal likelihood of emotionally deteriorating in a work environment.

On July 22, 2011, Dr. Judy K. Martin, a state agency medical consultant, indicated in a Psychiatric Review Technique Form (PRTF) that Plaintiff's impairments were not severe. She noted the functional limitation on Plaintiff's daily living, social functioning, and concentration were mild. Plaintiff had no episodes of decompensation. On May 2, 2012, Dr. E. Aquino-Carol, also a state agency medical consultant, affirmed the prior PRTF indicating no severe medically determinable impairment as to Plaintiff's mental condition. Another state agency medical consultant, Dr. Roger Fast, concluded the same on May 4, 2012, as to Plaintiff's physical condition. In his view, the alleged degree of limitations was not supported by objective findings.

On May 31, 2012, Dr. Morgan completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment, a check-the-box form, for Plaintiff and rated her with a marked limitation in the following areas: (1) "ability to work in coordination with or proximity to others without being unduly distracted," (2) "ability to complete a normal workday and workweek without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," (3) "ability to interact appropriately with the general public," (4) "ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes," and (5) "ability to travel in unfamiliar places or to use public transportation." AR 391. When Plaintiff's counsel requested a written explanation, Dr. Morgan provided the following corresponding basis for her rating: (1) "Pt[3] states her anxiety increased to a point she was unable to function around others. When in a public situation[;]" (2) "Pt states she is easily overwhelmed and unable to function for long periods of time[;]" (3) "Pt states she becomes so anxious about not being able to answer the public's questions. For [*sic*] she can not function[;]" (4) "Pt cries easily because is so easily overwhelmed[;]" and (5) "Pt becomes so overwhelmed she can not find her way[.]" AR 424-425.

6. <u>Vocational expert testimony before the ALJ (December 11, 2012)</u>. Judith Najarian testified as a vocational expert at the hearing. The ALJ posed a number of hypotheticals for Ms. Najarian. First, she directed Ms. Najarian to assume a person of the same age, education and work background as Plaintiff, who has no exertional limitations and is limited to simple, routine tasks.

---

[3] "Pt" refers to patient.

6

Ms. Najarian opined that such an individual could not perform Plaintiff's prior work (which was generally semi-skilled), but could perform "the full range of unskilled work." AR 44. The ALJ then directed Ms. Najarian to assume the same person who could perform medium work: lifting 50 pounds ocassionally and frequently lifting or carrying 25 pounds; sit, stand or walk for six hours in an eight hour workday. She again opined that such a person could not perform Plaintiff's prior work, but could perform all "medium, light and sedentary unskilled" work. AR 45. Finally, the ALJ asked Ms. Najarian to assume the same person as the second hypothetical and who cannot concentrate for longer than an hour at a time and likely to miss four days of work each month. She opined that such person could perform "no work, past or otherwise." AR 45.

Plaintiff's counsel also presented a hypothetical. He asked Ms. Najarian to assume a person as described by the ALJ and who is also markedly limited in ways similar to the Plaintiff with the addition that this person is "markedly limited in the ability to travel to unfamiliar places or use public transportation." AR 45. To this, Ms. Najarian opined such person could perform no work.

## II. DISCUSSION

A. *Legal Standards*

A claimant is disabled under Titled II and XVI if she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2011). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability. The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520; 416.920 (2011). Residual functional capacity is what a claimant "can still

do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1) (2011). "The claimant carries the initial burden of proving a disability in steps one through four of the analysis. However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In this case, the ALJ found that at step one, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 15, 2003. At step two, Plaintiff had severe impairments of major depressive disorder, anxiety disorder, panic disorder without agoraphobia, and lumbar strain. At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff had the residual functional capacity to lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk 6 hours, sit 6 hours in an 8-hour workday, and was limited to performance of simple, routine tasks. And at step four, Plaintiff was unable to perform any past relevant work. But, at step five, Plaintiff had acquired the skills from her past relevant work which are transferable to other jobs existing in significant numbers in the national economy. Consequently, the ALJ concluded that Plaintiff was not disabled as defined under the Act.

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g) (2011). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner. However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted). "If the evidence can support either outcome, the

Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2011).

B. *Analysis*

Plaintiff contends the ALJ erroneously rejected the opinions of Dr. Morgan, a treating physician. According to Plaintiff, the ALJ did not provide specific and legitimate reasons, and failed to view the medical record as a whole, engaging instead in a simplistic reading of the reports, assessments and progress notes. In response, the Commissioner asserts the ALJ provided permissible reasons for rejecting Dr. Morgan's opinions, namely that they were unsupported and based on Plaintiff's subjective complaints which were contradicted by the record. Def.'s Opp. 6-7.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (footnote and citation omitted). To reject a treating physician's opinion which is contradicted by another physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Id.* (internal quotations omitted); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010). But an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quotations and citation omitted).

In determining Plaintiff's residual functional capacity,[4] the ALJ discussed the opinions of Drs. Lewis, Aquino-Carol, and Morgan. With regard to Dr. Morgan, the ALJ stated:

> I give very little weight to [Dr. Morgan's] opinion because Dr. Morgan relied heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept as true most, if not all, of what the claimant reported. As noted above, the claimant is able to perform her activities of daily living and spend time with others. [¶] After careful consideration of the evidence, I find that the claimant's

---

[4] The residual functional capacity finding at step three is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1520(e), 416.920(e) (2011).

9

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this section.  [¶]  In this case, the claimant is less than fully credible because of inconsistent statements and unsupported allegations.

AR 15.  Stated otherwise, the ALJ's reasons for minimizing the weight of Dr. Morgan's opinion are: (1) because Dr. Morgan relied heavily on Plaintiff's subjective reporting, (2) because there is evidence contrary to the opinion, and (3) because Plaintiff's symptoms and allegations are not fully credible.  These reasons are supported by substantial evidence in the record.

First, Dr. Morgan's assessments of Plaintiff's marked limitations appear in a check-the-box form, which is conclusory and devoid of analysis.  Such forms are generally disfavored.  *Cf.* 20 C.F.R. § 404.1527 (2011) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.")  When Plaintiff's counsel requested an explanation, Dr. Morgan wrote in response for the most part that they were based on what "Pt state[d] . . . ."  AR 424.  Her responses were brief.[5]

Plaintiff urges that the ALJ should have viewed Dr. Morgan's treatment notes, which support her assessments.  The treatment notes contain Plaintiff's subjective statements and Dr. Morgan's objective observations.  The subjective statements range from descriptions of Plaintiff's anxiety and panic attacks to her family-related issues.  The objective observations include ratings of mood, affect, concentration, insight, and orientation, among other.  The ratings were generally "dysphoric" as to mood, "broad" as to affect, and "fair" as to concentration and insight.  On their face, the treatment notes do not suggest a connection to the marked limitations of completing a normal workday and workweek, ability to interact with the general public or get along with co-workers, or the ability to travel to unfamiliar places.  Consequently, one could conclude that Dr. Morgan relied heavily on Plaintiff's statements rather than the clinical observations and statements obtained during treatment in concluding Plaintiff suffered marked limitations.  *Contra Garrison v. Colvin*, 759 F.3d

---

[5] On the same document containing Dr. Morgan's handwritten responses were the words, "pull chart," which suggests she may have referred to some chart in drafting her responses.  But no chart appears in the record.  Rather, Dr. Morgan's treatment notes include use of a table to classify her objective observations of Plaintiff.

10

995, 1014 n.7 (9th Cir. 2014) ("[T]he Commissioner suggests that the ALJ was entitled to reject their opinions on the ground that they were reflected in mere check-box forms . . . . This argument rests on a mistaken factual premise. The check-box forms did not stand alone: they reflected and were entirely consistent with the *hundreds of pages of treatment notes* created . . . in the course of their relationship with Garrison.") (emphasis added).

Second, Plaintiff's statements in her AFR and to Dr. Lewis and the Third Party AFR belie Dr. Morgan's opinion. Plaintiff reported daily activities which involved getting her children ready for school, making her bed, and doing some household chores. She was able to drive, go out alone, shop in stores twice a week and take her children to the movies once or twice a month. Plaintiff spent time with others once or twice a month and had several friends with whom she has been close for 30 years. Collectively, this evidence does not suggest an individual with marked limitations in her ability to work in coordination with or in proximity to others, or ability to interact appropriately with the general public.

At the same time, the ALJ's credibility finding is well supported by substantial evidence. "Credibility determinations are the province of the ALJ," *Bowen*, 885 F.2d at 604. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). But the findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. The ALJ may consider . . . inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* at 958-959 (quotations and citations omitted).

The ALJ noted that at the hearing Plaintiff testified to having back and neck issues but only took Ibuprofen for her pain. She had not obtained any diagnostic images or began physical therapy though she was advised to do so in April 2012 (about eight months before the hearing). An April 4, 2012 handwritten and largely illegible document from the Clinic, which the ALJ cited, shows a plan for Plaintiff to undergo physical therapy and obtain certain medications, without any plan to obtain diagnostic images. The ALJ's finding on this point is thus not entirely accurate. But this partial

inaccuracy does not invalidate the ALJ's credibility finding because Plaintiff herself testified she had not seen a physical therapist even though the plan was for her to undergo physical therapy.

Additionally, the ALJ noted that Plaintiff testified she does not get along with others or feel comfortable around them, yet during a visit to the Clinic reported that she enjoyed being with her children, roller skating, and going to the movies. Plaintiff also reported to Dr. Lewis that she has several friends. Plaintiff's contradictory evidence is therefore fully supported by the record. Related to this credibility finding, the Court notes that Plaintiff's AFR indicates she spent time with others once or twice a month and the Third Party AFT indicates Plaintiff shopped in stores twice a week, all of which are activities inconsistent with Plaintiff's testimony about being uncomfortable around others.

Moreover, the Court notes other contradictions which cast doubt on Plaintiff's credibility. While Plaintiff testified that her mother and sister handled her finances, she reported in the AFR that she could manage her finances though she gets overwhelmed when writing checks to pay the bills. This was confirmed by her sister's statements in the Third Party AFR. Finally, Plaintiff testified she only left the house for a doctor's appointment and would be accompanied by someone, but her sister stated in the Third Party AFR that Plaintiff goes outside four to six times a day and could do so alone.

Though not in abundance, the record supports the ALJ's belief that Plaintiff is not fully credible. Thus, the ALJ aptly gave very little weight Dr. Morgan's opinions as based on Plaintiff's subjective representations of her conditions.

Lastly, Plaintiff's contention that the ALJ should have sought clarification from Dr. Morgan is without merit. An ALJ will seek additional evidence or clarification when the evidence received from the medical source presents an insufficient basis from which to make the disability determination. 20 C.F.R. §§ 404.1512(e); 416.912(e) (2011). This occurs "when the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Id.* Here, the ALJ found no such defect in Dr. Morgan's opinions which required additional evidence or clarification. Instead, the ALJ found Dr. Morgan

relied too heavily on Plaintiff's subjective statements and questioned Plaintiff's credibility.  *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability. The ALJ did not make a finding that the report was inadequate to make a determination regarding Ms. Thomas' disability. Instead, the ALJ disagreed with the report's finding . . . .")  The ALJ properly considered Dr. Morgan's opinions and afforded them proper weight.

## III.  CONCLUSION

The Court finds that the ALJ applied appropriate legal standards and that substantial evidence supported the ALJ's determination that Plaintiff was not disabled.[6]  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:  **July 29, 2015**                 **/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE

---

[6] Finding the ALJ did not err, the Court need not address Plaintiff's discussion of the "credit-as-true" rule.